UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMAL SMITH,

          Petitioner,

     v.

RON FRAKES,

          Respondent.

CASE NO. C09-5315RJB

REPORT AND RECOMMENDATION

Noted for NOVEMBER 13, 2009

     The underlying Petition for a Writ of Habeas Corpus has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and 636 (b)(1)(B), and Local Magistrate Judge's Rule MJR3 and MJR4. Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from state convictions out of Thurston County. Petitioner was convicted by jury trials of two counts of attempted murder in the first degree (counts I and V), one count of first degree robbery (count II), one count of unlawful possession of a controlled substance, (marijuana) (count III), one count of unlawful possession of a firearm (count IV), and one count of residential burglary (count VI) (Dkt. # 12, Exhibit 1). Petitioner's sentence includes

weapons enhancements on counts I, II, and III. Petitioner was sentenced to a total of 700 months incarceration (Dkt. # 12, Exhibit 1).

FACTS

The Washington State Court of Appeals summarized the facts as follows:

On February 15, 2003, a marijuana deal was arranged between Jason Fonder (the dealer) and a group of individuals that included Smith, Jerald Wilson, and Charles Engle. The deal occurred in a third party's home while Wilson waited in a car outside. The deal was for three ounces (approximately 85 grams) of marijuana. Fonder and Smith went into the kitchen to weigh and examine the marijuana, while Engle and Fonder's brother sat in the living room. When Fonder asked for payment, Smith pulled out a gun, placed it to Fonder's head, and said, "Here's your money." 1 Report of Proceedings (RP) at 35. Smith then shot Fonder. Wilson heard the gunshot and decided to drive off, but as he did so, Smith jumped into the car. Smith was still holding the gun.

Immediately after the shooting, responding officers learned that an individual was acting strangely two or three blocks from the shooting. The individual, later identified as Engle, was apprehended. Near Engle's place of arrest, officers found a 55.6-gram bag of marijuana.

Fonder survived the shooting. The day after the shooting, Fonder gave a description of his assailant, whom he had not previously known. He described the assailant as a black man, 18 to 23 years old, six feet tall, 190 to 200 pounds, and having dark hair. The description fit Smith. Fonder read several newspaper articles about the shooting during his hospital stay. One article included a picture of Smith. After reading the article, Fonder identified Smith from the photomontage.

Although he was not in custody, the State charged Smith with, among other things, attempted first degree murder (the "drug-deal" charges). Smith eluded capture for several months but was eventually arrested in May 2004. Trial was set for July 19, 2004. Smith was detained in a county jail from his arrest through the trial date.

The night before Smith's trial was to begin, Fonder returned home with his family to find that someone had broken into the family home. The front door was kicked in, breaking the frame, and a bedroom window was shattered. Nothing was taken from the home. When the Fonder family had left for the evening, a television and lights were left on and cars were parked in the driveway.

Due to the suspicious nature of the break-in, Smith's trial was continued and law enforcement focused its investigation on Smith. As part of the

REPORT AND
RECOMMENDATION - 2

investigation, Detective Susan Bergt reviewed Smith's collect telephone calls at the county jail. Inmate calls made at the jail commence with a recording informing the inmate that the call may be monitored or recorded. The recipient of the call hears the same message before the call can be accepted.

Detective Bergt found that Smith made over 400 calls to a telephone number listed for his girl friend, Dixon. The first call was very brief, with the recipient telling Smith that "Felicia's not here," and Smith telling the recipient he would call back later. Ex. 50 (2536270777.20040521.0701.wav at 0:40).

During the next call, Smith told Dixon, "I want to read something to you and I want you to write down what's important." 2 RP at 213. Smith then read the attempted murder charge from the State's charging document. When he got Fonder's name, he paused, said the name, paused again, and then continued. Smith then asked, "Did you write down what was important?" 2 RP at 216. Dixon answered affirmatively, and Smith responded, "I know you know what I thought was important." 2 RP at 216. Later in the conversation, Smith asked, "Did you write down the name?" 2 RP at 216. Dixon said that she did and that she knew what to do with the important name she wrote.

In two calls the next day, Smith and Dixon discussed a "payment." 2 RP at 219. Detective Bergt later described the first of these calls as follows: "[T]here's a discussion about a payment . . . and he tells - - Mr. Smith tells Ms. Dixon if she got the paper with an address on it and told her she needed to know where the place is because they have to find a way to get the music." 2 RP at 219.

In the second call, Smith asked, "You don't want the music to be singing, right?" 2 RP at 221. When Dixon agreed, Smith responded, "You know which song I'm talking about? . . . The name of the song I gave you yesterday, right, that's the song I'm talking about." 2 RP at 221. Smith then said, "cause I know that those people, the uhh, the uhh, the ordering people, they'll take money, know what I'm saying. If they'll take money, then know what I'm saying, it's all good." Ex. 50 (2536270777.20040523.1151.wav at 01:41). Smith also said, "I think that they will take payment but we just gotta find where the song's at." Ex. 50 (2536270777.20040523.1151.wav at 02:10). Dixon then asked about the "other song," to which Smith responded, "If the song I get is right, the right song, then the other song doesn't matter." 2 RP at 221.

Multiple conversations followed during which Smith and Dixon discussed Smith's court date, Dixon contacting unnamed people and relaying messages, and Dixon receiving a letter from Smith that explained things. Detective Bergt described one such call as follows: "She asks him who he wants told, he answers back that there's people on the payroll and they know when it's time to do business." 2 RP at 228.

Several calls occurred on July 16, 2004, three days before Smith's trial. In the first call, Dixon told Smith that she had been out late the night before with some people looking for a house. Dixon stated that they did not find the house and that they wanted to do it again. Detective Bergt described a second call: "[H]e tells here that he's trying to get free and that he thought that tonight it would be done." 2 RP at 237. And in two other calls summarized by Detective Bergt, there was talk about "getting some more hollow tips" and Smith instructing Dixon to "call what's his name and find out what is happening and put that ASAP on it right away." 2 RP at 238.

The next day, Smith and Dixon discussed the color and description of a house. Dixon expressed concern about whether it was one "house" or another, to which Smith told Dixon to figure it out. 2 RP at 239. In another call, Dixon told Smith that "it was vacant" and that she "had looked at the wrong number." 2 RP at 240. Smith then became angry, started swearing, and saying, "damn, damn, damn." 2 RP at 240. Dixon reassured Smith that everything would be okay. Smith told Dixon that he was "counting on this" and that he wanted to make sure that Dixon had "the right place." 2 RP at 240. Smith then asked whether "it was L-shaped" like he had shown her. 2 RP at 240.

Smith and Dixon talked again on the morning of Smith's trial. Dixon told Smith, "It's on the right track, it just wasn't right, it's not where the car gets parked, the parking lot was empty." 2 RP at 242. Smith then gave Dixon three numbers that, along with four numbers he would give her in a later call, matched Fonder's telephone number.

Smith made several subsequent calls to Dixon's telephone number to talk to an unidentified male. In one, the male told Smith how "it was messed up" and how "the lights were on but it was empty." 2 RP at 243. In another, Detective Bergt summarized:

> He tells him that the trial has been continued now for another week and so he tells him that they have a whole week and they need to work fast, that his girl has all the info, that she has the hardware and all the ingredients to make what they need . . . [He] tells the same male that the victim's testimony is 75 percent of his case and without the victim there would be no case.

2 RP at 250. In another call, there was a discussion about whether "people" had moved and whether someone should go "to do a survey and look for a billing address." 2 RP at 261. And in the last call, Dixon interrupted to ask about the "little black thing." 2 RP at 261. Smith responded, "yeah, yeah my CD rack, that's what we called it. You need to give it to my brother because we don't want those over there." 2 RP at 261-62.

Based on the telephone calls, Smith's jail cell was searched and a search warrant was issued for Dixon's home. In Smith's cell was a piece of paper with Fonder's telephone number and an internet website commonly used to locate and map addresses. In Dixon's bedroom, law enforcement found letters from Smith and pictures of Smith and Dixon together.

The State charge Smith and Dixon with attempted first degree murder and residential burglary (the "break-in" charges). Smith and Dixon were tried jointly in a trial that included the drug-deal and break-in charges. On the drug deal charges, Smith was found guilty of attempted first degree murder, count I ("S-I"); first degree robbery, count II ("S-II"); unlawful possession of a controlled substance (marijuana), more than 40 grams, count III ("S-III"); and first degree unlawful possession of a firearm, count IV ("S-IV"). The jury also found that Smith was armed with a firearm for counts S-I, S-II, and S-III. On the break-in charges, Smith was found guilty of attempted for degree murder, count V ("S-V"), and residential burglary, count VI ("S-VI"). Dixon was likewise found guilty of attempted first degree murder, count I ("D-I"), and residential burglary, count II ("D-II").

The sentencing court imposed standard range sentences on all counts for Smith and Dixon, with firearm enhancements imposed against Smith on counts S-I, S-II, and S-III. This court consolidated Smith and Dixon's appeals for review.

(Dkt. # 12, Exhibit 2(footnotes omitted)).

## **PROCEDURAL BACKGROUND**

Petitioner filed a direct appeal raising the following grounds for review:

1. The jury was erroneously instructed regarding "deadly weapon /firearm" in Instruction 42, which pertained to the Special Verdicts for enhancements to Count I, Count II, and Count III.

2. The Appellant was denied his right to effective assistance of counsel where his trial attorney did not present defense witnesses and relied solely [o]n cross-examination of prosecution witnesses.

3. The Appellant was denied his right to effective assistance of counsel where his trial attorney did not present a tangible, cogent defense theory.

4. The Appellant's defense attorney provided ineffective assistance of counsel by failing to move to suppress the out-of-court selection of Smith's picture from a photo montage, by the complaining witness.

REPORT AND
RECOMMENDATION - 5

5. The Appellant's defense attorney provided ineffective assistance of counsel by failing to argue that Counts I, II, and III are part of the same criminal conduct.

6. The Appellant's defense attorney provided ineffective assistance of counsel by failing to argue that Counts V and VI are part of the same criminal conduct.

7. The trial court erred by entering an offender score of 11 for Count I and III, and an offender score of 13 for Count II.

8. The trial court erred by entering an offender score of 12 for Count VI.

9. The trial court erred by denying the defense motion to dismiss the charges.

10. The state [failed] to present sufficient evidence to support a finding of guilt of all six counts.

11. The cumulative errors of the Appellant's trial counsel's deficient performance prejudiced the Appellant and materially affected the outcome of the trial and the Appellant's sentencing range.

(Dkt. 12, Exhibit 3). The Washington State Court of Appeals affirmed the conviction and sentence on April 4, 2006 (Dkt. # 12, Exhibit 2). A motion for reconsideration was denied and petitioner then filed a motion for discretionary review with the Washington State Supreme Court (Dkt. # 12, Exhibit 8). Petitioner raised the following grounds for review:

1. Was the Petitioner denied his State and Federal right to effective assistance of counsel where trial counsel did not present defense witnesses and instead relied solely on cross-examination of the prosecutor's witnesses?

2. Was the Petitioner denied his right to effective assistance of counsel under the State and Federal constitutions where trial counsel did not present a tangible, cogent defense, but instead alluded to "cross-racial identification" and bias on the part of Smith's co-defendants who testified on behalf of the state, where the Appellant was not initially identified by the complaining witness, and was identified in a photomontage only after approximately one month had passed since the date of the incident?

3. Was the Petitioner denied his right to effective assistance of counsel under the State and Federal constitutions where his attorney failed to move for suppression of the complaining witness" pre-trial identification [of] Smith where he initially did not identify Smith, but did subsequently [identify]

him in a photomontage approximately one month after the alleged incident?

4. Whether the Petitioner received ineffective assistance of counsel under the State and Federal constitutions where his attorney failed to challenge the offender score as calculated by the state, and did not argue that Counts I, II, and III are part of the same criminal conduct, and failed to argue that Counts V and VI are part of the same criminal conduct?

5. Was the Petitioner's rights under the State and Federal constitutions violated where the State failed to [provide] sufficient evidence to convict the Petitioner of attempted first degree murder and first degree robbery, where Smith engaged in a series of telephone calls with Felicia Dixon in which he emphasized the complaining witness' name, asked if Dixon "wrote down what was important," as well as other statements?

6. Did the trial court's imposition of a firearm enhancement violate Smith's Sixth Amendment right as defined by Apprendi and Blakely where the jury was instructed regarding a "deadly weapon/firearm" enhancement in Instruction 42, and where the jury found that Smith was armed with a firearm in Special Verdict Forms AA, BB, and DD?

7. Did Division II of the Court of Appeals err in affirming Smith's convictions?

(Dkt. # 12, Exhibit 8). The Washington State Supreme court denied review without comment on January 31, 2007. The state court mandate was issued February 9, 2007 (Dkt. # 12, Exhibit 10).

Three hundred and sixty-three days later,

petitioner filed a personal restraint petition in the Washington State Court of Appeals (Dkt. # 12, Exhibit 11). In that petition he raised the following grounds for review:

1. The record is inadequate to permit effective appellate review.

2. The ends of justice would be served by this court re-examining the out-of-court identification in light of new facts.

3. Testimony of in-court identifications that was tainted by an impermissibly suggestive showing of an unarranged photo show-up and had no independent origin violated Mr. Smith's right to due process.

REPORT AND
RECOMMENDATION - 7

4.  Trial counsel provided ineffective assistance of counsel when he failed to request an instruction on the lesser crime of attempted murder in the first degree.

(Dkt. # 12, Exhibit 11). On September 25, 2008, the State Court of Appeals denied the petition (Dkt. # 12, Exhibit 14). Petitioner sought discretionary review in the Washington State Supreme Court and raised the following grounds for review:

    1.  Under the Fourteenth Amendment Due Process Clause, a criminal defendant is constitutionally entitled to a record of sufficient completeness to permit effective appellate review of his or her claims.

    2.  Under the Fourteenth Amendment Due Process Clause, an identification procedure that is unnecessarily suggestive and gives rise to the likelihood of misidentification is in violation of due process of law.

    3.  Under the Sixth Amendment right to effective assistance of counsel. . . Smith's counsel was ineffective.

(Dkt. # 12, Exhibit 15). The Washington State Supreme Court denied review and, after a motion to modify was also denied, issued a certificate of finality on May 20, 2009 (Dkt. # 12, Exhibit 19).

This habeas corpus petition followed and petitioner raises four grounds for review:

    1.  Record of Sufficient Completeness. A defendant is constitutionally entitled to a "record of sufficient completeness" to permit effective appellate review of his or her claims.

    2.  Sufficiency of the evidence. All of the evidence for Counts 5 and 6, attempted murder 1 and residential burglary are made completely of telephone calls that were not transcribed for the record nor was there an adequate record to show exactly what calls were played for the jury or how long. . . . The evidence is insufficient to prove beyond a reasonable doubt that Mr. Smith attempted to commit murder in the first degree and residential burglary.

    3.  Out of Court Identification. Under the Fourteenth Amendment Due Process Clause an identification procedure that is unnecessarily suggestive and gives rise to the likelihood of misidentification is in violation of due process of law.

REPORT AND
RECOMMENDATION - 8

4.    In-Court Identification. The in-court identification of Mr. Smith was
              tainted by an "unarranged photo show-up" and had no independent origin.

(Dkt. # 1). Petitioner has moved to dismiss his fourth claim (Dkt. # 15). The court will not address that claim in this Report and Recommendation (Dkt. # 15).

## EVIDENTIARY HEARING NOT REQUIRED

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, this court concludes that there is no reason to conduct an evidentiary hearing.

## DISCUSSION

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal

habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984);

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

*A.     Exhaustion.*

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented at every level of appeal. Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S. 364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id. *citing* Picard v. Connor, 404 U.S. 270 (1971) *and* Anderson v. Harless, 459 U.S. 4 (1982).

Respondent argues the second claim is unexhausted because it was not clearly presented as federal claim when it was before the state court (Dkt. # 12, page 11). Petitioner has placed before the court evidence showing that his co-defendant presented this claim as a federal claim. Further, petitioner brought a motion to incorporate his co-defendant's argument into his brief and

that motion was granted (Dkt. # 16). However, respondents are correct in arguing the claim petitioner presents is not the same claim as that presented in state court.

On direct appeal petitioner argued the evidence was insufficient, but did not argue it was insufficient because telephone calls had not been transcribed (Dkt. # 12, Exhibit 3, pages 34 to 40), (Dkt. # 12 Exhibit 8, pages 16 and 17). In the personal restraint petition petitioner argued the record was inadequate, not that the evidence was insufficient (Dkt. # 12, Exhibit 11, pages 6 to 10). The second claim is sufficiency of the evidence to convict on counts V and VI is unexhausted.

      B.     *Procedural bar*.

Normally, a federal court faced with an unexhausted petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Petitioner, however, cannot return to state court. He is barred from filing another petition in state court as any attempt to file another petition will be deemed successive and possibly time barred. See, RCW 10.73.090 and 10.73.140.

Federal Courts generally honor state procedural bars unless it would result in a "fundamental miscarriage of justice." or petitioner demonstrates cause and prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner here cannot show cause and prejudice in state court.

To show cause in federal court petitioner must show that some objective factor external to the defense prevented petitioner from complying with state procedural rules relating to the presentation of his claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). Here, petitioner simply failed to raise his issues at each stage of review in state court. Thus, petitioner cannot show cause that excuses his procedural default in state court. Accordingly, the second ground

for review in this petition is procedurally defaulted and should not be considered or addressed on the merits. The first and second claims will be addressed on the merits below.

C. *Ground one, Adequacy of the Record.*

The last reasoned opinion of the state court on this matter is found in the direct appeal opinion of the Washington State Court of Appeals. The Washington State Court of Appeals held:

> Smith and Dixon maintain that they cannot adequately challenge their convictions because the appellate record does not fully reflect which jail telephone calls the jury heard. They assert that they cannot adequately challenge the sufficiency of the evidence and that there may be additional issues to raise if the record was perfect. We disagree.
>
> A defendant is constitutionally entitled to a "record of sufficient completeness" to permit "effective appellate review of his or her claims." *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003) (quoting *State v. Thomas*, 70 Wn. App. 296, 298 852 P.2d 1130 (1993)). Sufficient completeness, however, does not necessarily equate with a complete verbatim transcript. *Tilton*, 149 Wn.2d at 781. A record is sufficient if it allows appellate counsel to determine which issues to raise and it "place[s] before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." *Tilton*, 149 Wn.2d at 781 (quoting *State v. Jackson*, 87 Wn.2d 562, 554, P.2d 1347 (1976).
>
> The record here is not ideal: the conversations played to the jury were not transcribed; the conversations are identified in the trial transcript only by an exhibit number for a compact disc-recordable (CD-R) containing all of the recorded conversations; and those recordings are listed on the CD-R by a nondescript and generic file number. Nonetheless, the verbatim report of the trial proceedings does contain Detective Bergt's unchallenged summaries of each recording that was played, with an occasional reference to direct quotes. The transcript also contains a few references that can be matched to a specific file on the CD-R. In addition, we note that Smith and Dixon received the recordings and Detective Bergt's investigative notes as part of discovery; defense counsel told the trial court that they had listened to the recordings; the court indicated it would play any relevant recording defense counsel requested; and counsel made no request. The record presented for our review is sufficient to address the appellants' assignments of error.

(Dkt. # 12, Exhibit 2, pages 7 and 8(footnotes omitted)). Petitioner challenges the appellant court's representation that the summaries were uncontested (Dkt. # 16). But he does not argue

the summaries were in any way inaccurate. Thus, the summaries were uncontested as to their accuracy.

The state court correctly identified and applied the relevant law. The constitution entitles a criminal defendant to a record of sufficient completeness to permit effective appellate review of his or her claims. Coppedge v. United States, 369 U.S. 438, 446 (1993). Petitioner was able to raise and argue his claim regarding evidence and, the evidence is sufficient to convict when viewed in a light most favorable to the state. Petitioner fails to show the ruling of the state court in this resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or that the ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner's first ground for relief is without merit.

D. *Ground three, Out of court identification.*

The last reasoned opinion of the state court on this matter is found in the direct appeal opinion of the Washington State Court of Appeals. The issue was raised in the context of an ineffective assistance of counsel claim. The Washington State Court of Appeals held:

> Smith maintains that his counsel was ineffective for not objecting to Fonder's identification of Smith in the photomontage approximately four weeks after the shooting. Smith argues, not that the six-person photomontage itself was improper, but that the identification was faulty and inadmissible because Fonder had seen Smith's picture in a newspaper article five days after the shooting. We disagree.
>
> An out-of court identification violates due process if it was based on suggestive factors that "give rise to a very substantial likelihood of irreparable misidentification." *State v. Hilliard*, 89 Wn.2d 430, 438, 573 P.2d 22 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)). An identification tainted by suggestive factors is still admissible if, under the totality of the circumstances, the identification was reliable. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). This determination involves several considerations: the opportunity of the witness to view the defendant at the time of the crime; the witness's degree of attention; the

accuracy of the witness's prior description of the defendant; the level of certainty demonstrated at the confrontation; and the time between the crime and the confrontation, *Biggers,* 409 U.S. at 199.

Smith is correct that the newspaper photo tainted Fonder's later identification of Smith in the photomontage. In *State v. Coburne*, 10 Wn. App. 298, 307, 518 P.2ed 747 (1973). *Review denied*, 83 Wn.2d 1015 (1974), we concluded that a newspaper picture is an "unarranged photo showup," which, if viewed, could "implant[] a suggestion" for a later identification. Nonetheless, a trial court has broad discretion to determine whether a tainted identification is sufficiently reliable to be presented to the jury for its consideration. *State v. Kinard*, 109 Wn. App. 428, 432, 36 P.3d 573 (2001) (court abuses its discretion only when its decision is manifestly unreasonable or based upon untenable grounds or reasons). For Smith to therefore prevail on this ineffective assistance claim, he must show that the trial court would have excluded Fonder's identification had such a motion been raised by defense counsel; that is, Smith must show that the identification was inadmissible as a matter of law. *See in re Pers. Restraint of Benn*, 134 Wn.2d 868, 909, 952 P.2d 116 (1998); *State v. Price*, 127 Wn. App. 193, 203, 110 P.3d 1171 (2005), *review granted in part,* 156 Wn.2d 1005 (2006). Smith cannot carry this burden.

As we noted in *Coburne*, rarely will the viewing of a newspaper photo, by itself, "amount to [a] substantial likelihood of irreparable misidentification." 10 Wn. App. At 307. Here, several factors support the reliability of Fonder's identification: Fonder was face-to-face with Smith for several minutes before and at the time of the shooting; Fonder provided a fairly accurate description of Smith the day after the shooting; and Fonder testified that, aside from the newspaper photo, there was "[n]o doubt" in his mind that Smith was the shooter. 1RP at 60. Because the record presents tenable grounds to admit Fonder's identification, Smith cannot establish that the trial court would have excluded the identification had such a motion been made. Smith's failure to establish prejudice defeats this ineffective assistance of counsel claim.

(Dkt. # 12, Exhibit 2, pages 18 to 20). Petitioner's third ground for relief is without merit and this petition should be DENIED.

## **CONCLUSION**

Based on the foregoing discussion, the Court should DENY this petition. The second ground for relief is unexhausted but procedurally barred. The first and third grounds for relief are without merit, and petitioner has withdrawn the fourth ground for relief. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days from service of

REPORT AND
RECOMMENDATION - 14

1 | this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will

2 | result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140

3 | (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to

4 | set the matter for consideration on November 13, 2009, as noted in the caption.

5 |      DATED this 14th day of October, 2009.

*[signature]*

J. Richard Creatura
United States Magistrate Judge